DENNIS MANGUS, Plaintiff-Appellee, v. COCK ROBIN ICE CREAM COMPANY, INC., Defendant-Appellant.

First District (5th Division)   No. 76-1316

Opinion filed August 12, 1977.

112

James E. Saloga, of Nadelhoffer, Hennessy, Dommermuth & Brestal, of Naperville, for appellant.

Raymond Roffi, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Dennis Mangus, brought action on an amended complaint against defendant, Cock Robin Ice Cream Company, Inc., alleging a count for malicious prosecution and a count for false arrest. After a trial by jury, a general verdict was returned in favor of plaintiff. Defendant appeals from the judgment entered on the verdict contending: (1) there was error in refusing a tendered jury instruction; (2) defendant was entitled to a directed verdict or judgment notwithstanding the verdict; and (3) the damages awarded were excessive. We reverse.

A report of proceedings pursuant to Supreme Court Rule 323(c) was filed in this court, approved by the attorneys for both plaintiff and defendant. (Ill. Rev. Stat. 1975, ch. 110A, par. 323(c).) The pertinent facts follow.

Plaintiff introduced into evidence a copy of a quasi-criminal complaint, signed and sworn to by Rita Hubacek, which provides in part:

"Rita Hubacek agent for Cock Robin complainant, now appears before the Circuit Court of Cook County and states that Dennis Magnus [*sic*] has, on or about Aug. 12, 1973 7:24 P.M. at Cock Robin, 6956 W. Ogden Ave. committed the offense of Disorderly Conduct in that he did use a Citizen's Band radio installed in a 1973 Chevrolet Vega Ill/73 lic. TX8191 while in the parking lot at Cock Robin, 6956 W. Ogden Ave. to transmit obscene language namely 'FUCK YOU' and 'THOSE POOR BASTARDS DON'T KNOW WHAT THEY ARE EATIN.' knowing that said transmission was broadcasting over an F.M. radio being played in side the place of business for the entertainment of customers, which at the time of the obscene transmission numbered about 25 to 30 people, thereby causing a breach of the peace, in violation of Chapter Berwyn City Ordinance, Section 23-13."

Rita Hubacek was called by plaintiff as an adverse witness and testified. She is manager of defendant's store located at Home and Ogden Avenues in Berwyn, Illinois. At 7:25 p.m. on August 12, 1973, she heard the statement set forth in the complaint broadcast over an FM receiver which played music constantly during business hours in defendant's store. At the time there were approximately eight to 10 other employees and 35 customers in the store. She was working at the rear, and upon hearing the transmission, which took approximately 10 seconds, she went immediately to a window and looked into the parking lot, and then ran to the front window. She saw a white Chevrolet proceeding east on Ogden Avenue; the driver was alone and held a "C.B. radio mike" to his face. She ran down the street, and when she got within half a block of the car she wrote down its license number. She called the police and was taken to the station. She signed a complaint against plaintiff whose voice she recognized, having heard it about two months earlier in the store's parking lot. She then testified with respect to the November 1973 trial on the disorderly conduct complaint: that at that trial she first testified that plaintiff was in the parking lot during the transmission and she saw him through the window; that on cross-examination she stated that she recognized plaintiff as he drove by during the transmission, and at the time she was working 60 feet from the front window; and that upon further examination she stated as heretofore set forth that she ran down the street after the car. Plaintiff was found not guilty at the November 1973 trial.

Upon examination by defendant's attorney she testified that she heard the voice, that she signed the complaint and that she did not know what

the police did after she signed it. She had heard transmissions of the same voice over the FM on prior occasions. The police officer who took her to the station was Officer DeWolfe.

The attorney who had represented plaintiff when he was tried on the disorderly conduct charge in November 1973 testified at the trial herein. His testimony, which concerned testimony given by Rita Hubacek at the November trial, was essentially the same as Rita Hubacek's account of her previous testimony. He further stated that she had testified that she never met plaintiff nor heard his voice prior to August 12.

Plaintiff testified. He was notified to come to the Berwyn police station where he was arrested and posted bond. He was shown a copy of the complaint against him for disorderly conduct. About two or three days prior to August 12, he and other members of a CB radio club were broadcasting from defendant's parking lot. He was in his car, a white Vega, with his fiancee, now his wife. A man appeared and told them to leave because the transmissions were being picked up in the store. They refused to leave and the man wrote down their license numbers. He did not meet Rita Hubacek prior to August 12. He did not make the transmissions set forth in the complaint. On August 12 he and his fiancee were out all afternoon, and they arrived at his home at about 5 p.m. where they watched television with his mother until he took his fiancee home at 11 p.m. He further testified that as a result of the complaint being filed against him, he paid $500 in attorney's fees to defend against the complaint; he took four days off work and his employer knew of the complaint; and his doctor advised him by phone to take aspirin or a tranquilizer.

On cross-examination, plaintiff denied meeting with Officer DeWolfe prior to his arrest which occurred at the Berwyn Police Department. No employee of defendant had ever restrained him. He has never seen a doctor for the nervousness he claims. He consumed about 10 bottles of aspirin in the course of two months.

Mrs. Mangus, plaintiff's wife, testified. Her testimony on direct examination was essentially the same as that of plaintiff with respect to the events of August 12 and the incident in defendant's parking lot a few days prior thereto. On cross-examination she stated that at about 5 p.m. on August 12 plaintiff met with Officer DeWolfe at Ogden and Oak Park Avenues, and they discussed plaintiff's CB radio transmission at defendant's store. On re-direct examination she stated that plaintiff was not arrested or restrained at that meeting.

Mrs. Schampine testified that she is the social secretary of the CB club to which plaintiff belongs. There are 23 CB channels but her club uses only Channel 6. She monitored Channel 6 between 5 p.m. and 11 p.m. on

August 12, and during that time she did not hear a transmission by plaintiff.

Officer DeWolfe of the Berwyn Police Department testified on behalf of defendant. Sometime during the day on August 12, while it was still light outside, he received a call to go to defendant's store. The store manager advised him there had been an obscene transmission over the speaker system and that there had been other disturbing transmissions prior to this date. The manager gave him a license number and told him that the car had a CB radio and that it was either in the parking lot or going past the store when she heard the obscenities. He traced the license number to plaintiff, proceeded to plaintiff's home and determined that he had a CB radio. He told plaintiff's mother to have him get in touch with the police department. Later that day, while it was still light outside, he met plaintiff and his girlfriend at Oak Park and Ogden Avenues. He told plaintiff that defendant's store manager had identified him as transmitting obscene messages into the store. Plaintiff admitted that he did so, and agreed to remove the CB unit from his car. An hour or two later while on routine patrol, he stopped a car for a traffic violation. He heard the transmission: "that son of a bitch Office DeWolfe just stopped me and told me to take my CB out of my car, but there is no way I'm going to." He recognized the voice and informed defendant's store manager that plaintiff would not stop the transmissions. He told her to sign a complaint and "they" would arrest him. On prior occasions he had advised defendant's employees to try to take the license number of the vehicle from which they believed the obscene transmissions were coming.

On cross-examination DeWolfe stated that three or four hours elapsed from the time he spoke with the manager at the store until the time the complaint was signed at the police station. He did not appear at the disorderly conduct trial because he "may have" been sick.

The jury returned a verdict in favor of plaintiff for $4500. Defendant's post-trial motions for a directed verdict, judgment notwithstanding the verdict or a new trial were denied.

OPINION

On appeal defendant argues that it was entitled to a directed verdict or judgment notwithstanding the verdict since plaintiff failed to establish that defendant instituted the original proceedings against plaintiff without probable cause and with malice.

■■ The essential elements of a cause of action for malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was a defendant in the original

proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice; and (6) damages resulting to plaintiff. Each element must be present in order to sustain an action. *Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 211 N.E.2d 286, 28 A.L.R. 3d 741; *Jacobson v. Rolley* (1975), 29 Ill. App. 3d 265, 330 N.E.2d 256.

The want of probable cause for instituting proceedings is the basis for a malicious prosecution action (*Israel v. Brooks* (1860), 23 Ill. 526), and it has been held an indispensable element of the cause of action. (*Freides v. Sani-Mode Manufacturing Co.*) If it appears that there was probable cause to institute the original proceedings, such fact alone constitutes an absolute bar to an action for malicious prosecution. *Brown v. Tucker* (1918), 214 Ill. App. 162.

■■ A person should not be held liable for malicious prosecution upon a failure to convict the person accused. It is sufficient if there is probable cause, whether the accused is in fact guilty or not. (*Galarza v. Sprague* (1936), 284 Ill. App. 254, 1 N.E.2d 275.) Probable cause in this sense means "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary action and prudence to believe or entertain an honest and sound suspicion that the person accused is guilty * * *." (*Carbaugh v. Peat* (1963), 40 Ill. App. 2d 37, 47, 189 N.E.2d 14, 19.) A mistake or error not amounting to gross negligence will not affect the question of probable cause in an action for malicious prosecution when there is an honest belief by the complainant at the time of subscribing a criminal complaint that another is probably guilty of an offense; it is immaterial that the accused may thereafter be found not guilty. *Berner v. Prairie State Bank* (1935), 281 Ill. App. 31.

■■ We find that in the instant case the record discloses a failure on the part of plaintiff to prove lack of probable cause on defendant's part in instituting the disorderly conduct proceedings. Rather, the evidence clearly shows that defendant had probable cause to so proceed. Both plaintiff and his wife testified that plaintiff had transmitted from defendant's parking lot a few days prior to the date of this occurrence. Although it appears that at the original trial Rita Hubacek gave various accounts as to her tentative identification of plaintiff as the offender, it is clear that she gave Officer De Wolfe a license number she had obtained in connection with radio transmissions. Both plaintiff's wife and Officer DeWolfe testified that plaintiff met with Officer DeWolfe on the afternoon of the incident and discussed radio transmissions at defendant's store. It is the uncontroverted testimony of Officer DeWolfe that thereafter he advised Rita Hubacek that plaintiff would not stop the transmissions, and that if she would sign a complaint plaintiff would be arrested.

A reasonable ground for belief of the guilt of an accused may be on information from other persons as well as on personal knowledge, and such belief constitutes a defense to an action for malicious prosecution. (*Harpham v. Whitney* (1875), 77 Ill. 32.) It is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution in so proceeding. (*Gardiner v. Mays* (1887), 24 Ill. App. 286.) We find that at the time Rita Hubacek signed the complaint, she had done so based upon her independent belief that the car she described to Officer DeWolfe was involved in the incident, and the information subsequently told her by Officer DeWolfe. We conclude that defendant had probable cause to proceed against plaintiff.

■■ Malice is also an essential element of malicious prosecution. (*Freides v. Sani-Mode Manufacturing Co.; Carbaugh v. Peat.*) In order to support an action for malicious prosecution there must be both malice and want of probable cause, and they must concur. (*Keller v. Continental Distributing Co.* (1969), 105 Ill. App. 2d 327, 245 N.E.2d 513; *March v. Cacioppo* (1962), 37 Ill. App. 2d 235, 185 N.E.2d 397.) Malice may be inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where such want of probable cause has been clearly proved. (*Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 155 N.E.2d 809.) However, malice may not be inferred where probable cause exists. (See *Vasquez v. Jacobs* (1960), 23 Ill. App. 2d 457, 163 N.E.2d 230.) We have concluded that defendant proceeded against plaintiff with probable cause, and therefore malice cannot be inferred. Moreover, it was plaintiff's own testimony that he had not met Rita Hubacek prior to the date of the occurrence. A review of the record fails to disclose any evidence that defendant acted with malice.

■■ In the instant case the matter was submitted to the jury for a determination of claims of malicious prosecution and false arrest. Plaintiff testified that no employee of defendant restrained him and that he was arrested by the Berwyn Police Department. A party may still be liable for false arrest although it is shown that he himself did not restrain plaintiff. This court has held that where a person directs or induces an officer to make an arrest without a warrant, which arrest turns out to be illegal, he will be liable in the same manner as though he had made the arrest himself. (*Lindquist v. Friedman's, Inc.* (1936), 285 Ill. App. 71, 1 N.E.2d 529, *aff'd* (1937), 366 Ill. 232, 8 N.E.2d 625.) Here, however, the evidence does not show that Rita Hubacek solicited an unsuspecting officer to arrest plaintiff; but rather that she signed the complaint after Officer DeWolfe advised her to do so, following his investigation. Plaintiff was thereafter arrested pursuant to a complaint filed in accordance with the

applicable law. Where a defendant shows that an arrest or imprisonment was caused by a complaint issued pursuant to law, the burden of proof is on plaintiff to show that the proceedings were invalid or irregular. (See *Hermanson v. Goodyear* (1908), 139 Ill. App. 374.) Here, plaintiff has not challenged the validity of the proceedings. The complaint protects the defendant in an action for false arrest. (*Lindquist v. Friedman's, Inc.* (1937), 366 Ill. 232, 8 N.E.2d 625.) Accordingly, plaintiff has failed to sustain his burden of proof as to false arrest.

■■■ Defendant argues that based on the evidence it was entitled to a directed verdict or a judgment notwithstanding the verdict. In passing on defendant's motion for a judgment notwithstanding the verdict, both a reviewing court and the trial court must be governed by the same rules that apply to a motion for a directed verdict; that is, whether when all the evidence is considered together with all reasonable inferences from its aspect most favorable to plaintiff, there is a total failure to prove any necessary element of plaintiff's case. (*DeLeuw, Cather & Co. v. City of Joliet* (1945), 327 Ill. App. 453, 64 N.E.2d 779.) A directed verdict for defendant is justified where plaintiff fails to prove an essential element to establish a prima facie case. (*Franklin v. Grossinger Motor Sales, Inc.* (1970), 122 Ill. App. 2d 391, 259 N.E.2d 307.) A court of review is not warranted in disturbing the verdict of the jury, approved as it was by the trial judge, unless it is against the manifest weight of the evidence. (*Horvat v. Opas* (1942), 315 Ill. App. 229, 42 N.E.2d 867.) On a motion for a judgment notwithstanding the verdict for plaintiff, in determining whether the judgment for plaintiff is against the manifest weight of the evidence, a court must determine whether an opposite conclusion is clearly evident, and whether the verdict is clearly, plainly or indisputably against the preponderance of the evidence. (*Stowers v. Carp* (1961), 29 Ill. App. 2d 52, 172 N.E.2d 370.) In ruling on such motions, while a court must allow all inferences favoring the plaintiff, it must also consider and weigh the evidence favoring defendant. *Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 336 N.E.2d 338.

Consistent with all of the foregoing, defendant's motion for a judgment notwithstanding the verdict should have been granted. In light of our disposition it is unnecessary to consider defendant's other contentions on appeal.

Judgment reversed.

SULLIVAN, P. J., and WILSON, J., concur.